IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBYN BURBRIDGE,

      Plaintiff,

vs.                                                                                          1:20-cv-00100-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Robyn Burbridge's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 20), which was fully briefed on September 28, 2020. *See* Docs. 22–24. The parties consented to my entering final judgment in this case. Docs. 4, 9, 10. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Appeals Council erred by declining to consider additional evidence submitted by Ms. Burbridge. I therefore GRANT Ms. Burbridge's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Ms. Burbridge was born in 1974, earned a bachelor's degree in speech and language, and worked as a substitute teacher, a test scorer, a phone operator, and a Jenny Craig consultant. AR 61–67, 108, 223, 241.[3] Ms. Burbridge filed an application for Disability Insurance Benefits on March 31, 2017, alleging disability since May 29, 2015 due to schizoaffective disorder, depression, anxiety, migraines, post-traumatic stress disorder ("PTSD"), plantar fasciitis, back and neck pain, short-term memory loss, borderline diabetes, and obesity. AR 223–29, 240. The

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 14-1 through 14-9 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

Social Security Administration ("SSA") denied her claim initially on June 30, 2017. AR 155–58. The SSA denied her claims on reconsideration on August 2, 2017. AR 160–63. Ms. Burbridge requested a hearing before an ALJ. AR 164–65. On June 14, 2018, ALJ Lillian Richter held a hearing. AR 46–84. ALJ Richter issued her unfavorable decision on January 22, 2019. AR 22–45.

The ALJ found that Ms. Burbridge met the insured requirements of the Social Security Act through December 31, 2015. AR 27. At step one, the ALJ found that Ms. Burbridge had not engaged in substantial, gainful activity since May 29, 2015, her alleged onset date. AR 28. At step two, the ALJ found that Ms. Burbridge suffered from the following severe impairments: "obesity; plantar fasciitis; chronic migraine headaches; obstructive sleep apnea (OSA); spondylosis of the cervical spine, lumbar spine and thoracic spine; schizoaffective disorder, depressive type; adjustment disorder with mixed anxiety and depressed mood and bipolar disorder." *Id*.

At step three, the ALJ found that none of Ms. Burbridge's impairments, alone or in combination, met or medically equaled a Listing. AR 28–30. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Burbridge's RFC. AR 30–38. The ALJ found Ms. Burbridge had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could never climb ladders, ropes or scaffolds, never balance but could occasionally stoop. She should avoid exposure to unprotected heights, hazardous machinery, dust, odors, fumes and pulmonary irritants. She was limited to simple, routine work and to occasional interaction with supervisors and coworkers but no interaction with members of the public. She could not perform work in tandem with other employees and could not perform assembly line production work.

AR 30.

At step four, the ALJ concluded that Ms. Burbridge could not perform any of her past relevant work. AR 38. The ALJ found Ms. Burbridge not disabled at step five because she

4

could perform jobs that exist in significant numbers in the national economy—such as wire cutter/stripper, photo finisher, and plastic press molder. AR 38–39. On April 19, 2019, Ms. Burbridge requested that the Appeals Council review the ALJ's unfavorable decision. AR 220–22. Ms. Burbridge submitted additional evidence to the Appeals Council. AR 85–127. On December 6, 2019, the Appeals Council denied the request for review. AR 1–7. The Appeals Council found that Ms. Burbridge's additional evidence did not qualify for consideration. AR 2. Ms. Burbridge timely filed her appeal to this Court on February 3, 2020.[4] Doc. 1.

### IV.     Ms. Burbridge's Claims

Ms. Burbridge raises two arguments for reversing and remanding this case: (1) the Appeals Council erred by declining to consider some of the additional evidence[5] she submitted; and (2) the ALJ failed to adequately develop the record to clarify the limitations caused by her mental impairments. *See* Doc. 20. For the reasons that follow, the Court reaches only the first issue.

### V.     Analysis

The ALJ issued her unfavorable decision on January 22, 2019. AR 22–45. On May 30, 2019, at the suggestion of her attorney, Ms. Burbridge saw Steven K. Baum, PhD, for a consultative exam. AR 107–12. Dr. Baum spent a total of eight and a half hours conducting a clinical interview and a third-party interview, administering a battery of psychological testing, reviewing medical records from 2002 through 2018, and writing a report. *Id.* On June 17, 2019,

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

[5] In addition to records from Steven K. Baum, PhD, Ms. Burbridge also submitted additional evidence from treating provider Pamela Conry (AR 85–88), treating provider Donald E. Bonney, DC, PC (AR 89–105), and from her sister, Jana Anderson (AR 123–27). Ms. Burbridge only challenges the Appeals Council's rejection of the additional evidence from Dr. Baum.

Ms. Burbridge submitted additional evidence to the Appeals Council and requested that it consider the following records from Dr. Baum, all dated May 30, 2019:

1. Psychological Report (AR 108–12);
2. Medical Assessment of Ability to Do Work-Related Activities (Mental) (AR 113–14);
3. Schizophrenic, Paranoid, and Other Psychotic Disorders (Listing Form 12.03) (AR 115 );
4. Depressive, Bipolar and Related Disorders (Listing Form 12.04) (AR 116);
5. Anxiety and Obsessive-Compulsive Disorders (Listing Form 12.06) (AR 117 );
6. Personality Disorders (Listing Form 12.08) (AR 118); and
7. Trauma and Stressor-Related Disorders (Listing Form 12.15) (AR 119–20).

*See* AR 107.

In his psychological report, Dr. Baum reviewed Ms. Burbridge's mental health treatment records from 2002 through 2018. AR 109. He noted "consistency in diagnosis and treatment among all treatment providers since [Ms. Burbridge] was age 19." AR 110. Dr. Baum further found that "[d]espite a willingness to work and her denial of illness/adjustment to her psychosis (MMPI), [Ms. Burbridge] is no longer capable of work even with accommodation." *Id*. Dr. Baum opined that Ms. Burbridge's "onset date of work disability" was in 2015. *Id*.

The Medical Assessment of Ability to Do Work-Related Activities (Mental) form asked Dr. Baum to "consider [Ms. Burbridge's] medical history and the chronicity of findings [ ] **from before 12/31/2015 to current examination**." AR 113 (emphasis in original). Dr. Baum opined that Ms. Burbridge had the following moderate and marked mental limitations:

- Moderate to marked limitation in the ability to remember locations and work-like procedures;
- Slight to moderate limitation in the ability to understand and remember very short and simple instructions;
- Marked limitation in the ability to understand and remember detailed instructions;
- Marked limitation in the ability to carry out detailed instructions;
- Marked limitation in the ability to maintain attention and concentration for extended periods of time (i.e. 2 hour segments);
- Marked limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance;

- Moderate limitation in the ability to sustain an ordinary work routine without special supervision;
- Moderate limitation in the ability to work in coordination with/or proximity to others without being distracted by them;
- Moderate limitation in the ability to make simple work-related decisions;
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods;
- Moderate limitation in the ability to interact appropriately with the general public;
- Marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Marked limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate to marked limitation in the ability to respond appropriately to changes in the work place;
- Marked limitation in the ability to travel in unfamiliar places or use public transportation; and
- Marked limitation in the ability to set realistic goals or make plans independently of others.

AR 113–14.

The Appeals Council determined that this additional evidence did "not show a reasonable probability that it would change the outcome of the decision." AR 2. The Appeals Council explained that it "did not exhibit this evidence." *Id.* Thus, the Appeals Council did not consider the new evidence from Dr. Baum. *See Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished) ("the Appeals Council's dismissal of the additional evidence's import on [one of] the grounds [listed in 20 C.F.R. § 416.1470] indicates that it ultimately found the evidence did not qualify for consideration at all."); *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006) (stating that when the Appeals Council finds new evidence qualifies for consideration, it makes it part of the record); *Martinez v. Saul*, No. 19cv980 SCY, 2020 WL 4597024, at *5

(D.N.M. Aug. 11, 2020) ("When the Appeals Council stated it did not 'exhibit' the evidence, it also necessarily conveyed that it did not 'consider' the evidence.").[6]

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). The Appeals Council will consider additional evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (both effective Jan. 17, 2017 to Dec. 15, 2020). In addition, the plaintiff must show "good cause" for not submitting the additional evidence for the ALJ's consideration. 20 C.F.R. §§ 404.970(b), 416.1470(b) (both effective Jan. 17, 2017 to Dec. 15, 2020). Evidence is new "if it is not duplicative or cumulative," material "if there is a reasonable possibility that it would have changed the outcome," and "chronologically pertinent" when it "relates to the period before the ALJ's decision." *Threet*, 353 F.3d at 1191 (alterations and internal quotation marks omitted) (interpreting an older version of the regulations). The regulation's requirement that a claimant show a "reasonable *probability* that the additional evidence would change the outcome of the decision" can be read as a heightened materiality standard. *See Bisbee v. Berryhill*, No. 18cv731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019) (unpublished) (noting that the new

---

[6] An "exhibit" is "any evidence upon which a finding and decision are based," whether before an ALJ or the Appeals Council. Commissioner's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), I-4-2-20. If the Appeals Council had exhibited the evidence, it would appear in the "Medical Records" section at the end of the Administrative Record. Because the Appeals Council did not exhibit it, the records were "included in the administrative record" but placed at the beginning and treated as "procedural documents, similar to the hearing decision or AC denial notice." *Id.* Thus, the Appeals Council did not consider the additional evidence, and the additional exhibits are not part of the medical record before this Court.

regulations "heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable possibility of changing the outcome, now it requires a reasonable probability of changing the outcome").

If the Appeals Council fails to consider qualifying new evidence, the case should be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the complete evidence. *Threet*, 353 F.3d at 1191. However, if the evidence submitted to the Appeals Council does not qualify for consideration, then the Appeals Council does not consider it, and it "plays no role in judicial review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

### A. The evidence from Dr. Baum is new.

Ms. Burbridge argues that the evidence from Dr. Baum is new because it did not exist at the time the ALJ rendered her decision. Doc. 20 at 17. She argues that the evidence from Dr. Baum is not duplicative or cumulative because Dr. Baum conducted psychometric testing which did not appear elsewhere in the record, and because Dr. Baum "included an assessment of functional limitations relating to [her] mental impairments" not found elsewhere in the record. *Id*. The Commissioner concedes that the evidence is new. *See* Doc. 22 at 19–23 (raising no argument that the evidence is not new). Generally, the "[f]ailure to respond to an argument is [ ] deemed an acquiescence." *Mulford v. Altria Group, Inc.,* 242 F.R.D. 615, 622 n.5 (D.N.M. 2007). The Court, therefore, finds the evidence from Dr. Baum is new.

### B. The evidence from Dr. Baum is material.

Ms. Burbridge argues that the evidence from Dr. Baum is material because it "involves issues that were adjudicated by the ALJ and has a reasonable probability of changing the outcome." Doc. 20 at 17. She argues that Dr. Baum found numerous moderate to marked mental limitations in abilities needed to perform any job. *Id*. at 18. She argues that these

9

limitations, if considered by the ALJ, have a reasonable probability of resulting in an RFC finding that precludes her from being able to work.  *Id.*  The Commissioner argues that the evidence from Dr. Baum is not material, but this argument is based entirely on the assertion that the evidence is not chronologically pertinent.  *See* Doc. 22 at 21–23.  The Court agrees with Ms. Burbridge that the evidence is material and will further discuss chronological pertinence in the next section.

First, the evidence from Dr. Baum is material because the conditions he assessed were nearly the same conditions the ALJ found to be severe impairments.  The ALJ found Ms. Burbridge suffered from schizoaffective disorder, depressive type; adjustment disorder with mixed anxiety and depressed mood, and bipolar disorder.  AR 28.  Dr. Baum diagnosed Ms. Burbridge with generalized anxiety, major depression-recurrent, PTSD, and schizoaffective disorder, bipolar type.  AR 110.  Furthermore, Dr. Baum's report indicates that he reviewed treatment records dating back to 2002 for the same or similar mental conditions.  AR 109.

Second, the evidence from Dr. Baum is material because his opinion is the only one to fully assess Ms. Burbridge's mental residual functional capacity.  On initial determination, state agency consultant Dr. Scott Walker opined that Ms. Burbridge had "documented psychological impairments," but the record contained "insufficient evidence to determine how those impairments influence[d] her vocationally related functioning prior to [her date last insured]."  AR 135.  On reconsideration, state agency consultant Dr. Jill Blacharsh similarly found "insufficient medical evidence to make a mental health determination during the relevant period."  AR 145.  Dr. Baum's opinion provides the missing medical evidence that establishes how Ms. Burbridge's mental health impairments influence her vocational functioning.

Third, the evidence from Dr. Baum is material because he is the only provider to express Ms. Burbridge's mental limitations in vocationally relevant terms. Two of Ms. Burbridge's treating providers opined that she would not be able to maintain employment, but the ALJ rejected both of these opinions, in part on the grounds that they did not assess Ms. Burbridge's "functional limitations and abilities in vocationally relevant terms." AR 35, 38. Dr. Martha J. Kent, Ms. Burbridge's treating physician for twenty years, opined that Ms. Burbridge "seems to have a significant and likely disabling degree of social phobia which [has] not been compatible with holding a job" and that she "would not be able to hold a job which required interactions with other people and even the potential interview process for obtaining a job is extremely intimidating to her." AR 525, 724. Dr. Jonathan Novi noted that Ms. Burbridge had a "long-standing history of mood and psychotic symptoms" and stated that her symptoms "reportedly contributed to significant difficulties in social relationships, maintaining gainful employment, and fully-independent living." AR 667. The ALJ found Dr. Novi's letter of limited utility because "he did not assess [Ms. Burbridge's] functional limitations and abilities in vocationally relevant terms." AR 38.[7] Dr. Baum's opinion, which is expressed in vocationally relevant terms, calls into question the ALJ's discounting of Dr. Kent's and Dr. Novi's opinions.

Finally, the moderate and marked limitations in Dr. Baum's opinion have a reasonable probability of changing the outcome in this case. The only mental limitations the ALJ included in Ms. Burbridge's RFC were limitations "to simple, routine work and to occasional interaction with supervisors and coworkers but no interaction with members of the public" and an inability

---

[7] The ALJ stated that she "factored Dr. Novi's assessment into the residual functional capacity by limiting [Ms. Burbridge] to simple, routine work with little contact with coworkers and supervisors and no public contact." AR 38. However, as discussed below, Dr. Novi's assessment read in conjunction with Dr. Baum's opinion has a reasonable probability of resulting in an RFC that precludes Ms. Burbridge from being able to work.

11

to "work in tandem with other employees" or "perform assembly line production work."  AR 30.  Dr. Baum, however, found Ms. Burbridge significantly more limited than the RFC adopted by the ALJ.  Dr. Baum found Ms. Burbridge moderately or markedly limited in several abilities need to perform *any* job—including the ability to understand and remember very short and simple instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with/or proximity to others without being unduly distracted by them; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; and the ability to respond appropriately to changes in a routine work setting.  *Compare* AR 113–14 *with* POMS DI 25020.010(B)(2) (Mental Abilities Needed for Any Job)).

Dr. Baum's opinion has a reasonable probability of changing the outcome in this case because it discusses the same mental impairments considered by the ALJ and is the only medical opinion that contains a full assessment of Ms. Burbridge's mental RFC in vocationally relevant terms.  Dr. Baum's opinion contains greater mental limitations than those adopted by the ALJ and those limitations have a reasonable probability of leading to a finding that Ms. Burbridge is disabled.  Thus, Dr. Baum's opinion is material.

      C.   <u>The evidence from Dr. Baum is chronologically pertinent</u>.

Ms. Burbridge argues that the evidence from Dr. Baum is chronologically pertinent because it "relate[s] to" and references "the time period addressed in the ALJ's decision."  Doc. 20 at 19.  She argues that Dr. Baum's opinion corroborates the diagnoses and functional

12

limitations she testified about at the ALJ hearing. *Id*. The Commissioner counters that "[a] 2019 psychiatric examination and opinion of mental limitations is not probative of [Ms. Burbridge's] functional limitations four years ago in 2015." Doc. 22 at 21. The Court agrees with Ms. Burbridge.

Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ. *Threet*, 353 F.3d at 1191. In addition, newly submitted evidence is chronologically pertinent if it corroborates a prior diagnosis or a claimant's hearing testimony. *Padilla*, 525 F. App'x at 713. In *Padilla*, the court did not require that new evidence submitted to the Appeals Council necessarily pre-date the ALJ's decision to qualify as chronologically pertinent. *Id*. at 712. Instead, the court focused on whether the new evidence was pertinent to the issues that had been before the ALJ. *Id*. at 712–13; *see also* HALLEX I-3-3-6(B)(2) ("[A] statement may relate to the period on or before the date of the hearing decision when it postdates the decision but makes a direct reference to the time period adjudicated in the hearing decision.").

Dr. Baum's opinion is chronologically pertinent because it relates to the time period adjudicated by the ALJ and makes several direct references to this time period. Dr. Baum's opinion relied on "[Ms. Burbridge's] medical history and the chronicity of findings [ ] **from before 12/31/2015 to current examination**." AR 113 (emphasis in original). Dr. Baum further based his medical opinion on a review of medical records from 2002 through 2018. AR 109. In addition, Dr. Baum opined that Ms. Burbridge's "onset date of work disability" was in 2015. AR 110. Moreover, Dr. Baum's opinion corroborates testimony from Ms. Burbridge that the ALJ discounted: that she had difficulties with short-term memory, concentration, and focus; avoided people due to insecurity; and was unable to concentrate for more than 30 minutes at a time. AR 31. Dr. Baum's opinion also addresses the severity of Ms. Burbridge's schizoaffective disorder,

depression, anxiety, and bipolar disorder—impairments which were before the ALJ. *See* AR 28. As in *Padilla*, "[t]he additional evidence thus relates to the time period before the ALJ's decision" because it corroborates an earlier diagnosis and the claimant's hearing testimony. 525 F. App'x at 713. "As such, the Appeals Council should have considered the additional evidence in order to properly determine whether the ALJ's decision was supported by substantial evidence." *Id*.

The Commissioner argues that Dr. Baum "appears to have relied in part on evidence after the December 31, 2015 date last insured" in formulating his opinions and diagnoses: including psychological testing, an examination, and "current symptoms and findings" from May 30, 2019. Doc. 22 at 21–22. The Commissioner further argues that because Dr. Baum wrote his opinion in the present tense and relied on Ms. Burbridge's symptoms at the time of examination, his opinion is "not material to her mental health and limitations prior to her December 31, 2015 date last insured." *Id*. at 22. Ms. Burbridge argues that Dr. Baum's opinion was "clearly meant to be a retrospective opinion." Doc. 23 at 3. The Court agrees with Ms. Burbridge.

Dr. Baum's opinion is a retrospective opinion, and it addresses the relevant time period, which is before Ms. Burbridge's date last insured of December 31, 2015. In the "Integration and Interpretation" section of his opinion, Dr. Baum opined that Ms. Burbridge's "onset date of work disability is 2015." AR 110. Dr. Baum further opined that "[a] review of the medical records shows consistency in diagnosis and treatment among all treatment providers since the claimant was age 19." *Id*. Finally, Dr. Baum's Medical Assessment of Ability to do Work-Related Activities (Mental) specifically asked him to "consider the medical history and the chronicity of findings [ ] **from before 12/31/2015 to current examination**." AR 113 (emphasis in original). The Court agrees that Dr. Baum's opinion is retrospective to the relevant time period. *See Pruett*

*v. Saul*, No. 19cv817 SMV, 2020 WL 6196175, at *5 (D.N.M. Oct. 22, 2020) ("The Court accepts the plain meaning of the express words, which was that Dr. Baum was offering a retrospective opinion . . . ; his use of the present tense does not cast doubt on that."). The Court finds the evidence from Dr. Baum to be chronologically pertinent.

D. The Commissioner does not argue that Ms. Burbridge did not have good cause.

Generally, claimants must inform the ALJ about or submit written evidence to the ALJ no later than five business days before the date of a scheduled hearing, unless the claimant meets one of the good cause exceptions. *See* 20 CFR §§ 404.935, 404.970, 416.1435, 416.1470. Ms. Burbridge argues that she showed "good cause" for submitting the evidence after the ALJ hearing because the evidence did not exist at the time of the ALJ hearing, because previous counsel and the ALJ failed to obtain the evidence, and because it was an "unusual, unexpected, or unavoidable circumstance beyond [her] control." Doc. 20 at 14–16 (citing 20 C.F.R. § 970(b)(3)); *see also* AR 306 ("good cause" letter to Appeals Council). Ms. Burbridge points out that the Appeals Council did not rule on whether she had good cause for failing to submit the evidence to the ALJ prior to the hearing. *Id.* at 14. She further argues that the Appeals Council "implicitly" found good cause by not rejecting it on that basis. *Id*.

The Court need not reach the issue of whether Ms. Burbridge had "good cause" for the late submission of evidence in this case because the Commissioner does not argue that she did not. While the Commissioner generally outlines the law requiring a claimant to show "good cause," he does not argue that Ms. Burbridge failed to do so. *See* Doc. 22 at 19–24. Generally, the "[f]ailure to respond to an argument is [ ] deemed an acquiescence." *Mulford,* 242 F.R.D. at 622 n.5. The Court finds the Commissioner has conceded this issue.

## VI. Conclusion

Having determined that the additional evidence from Dr. Baum submitted by Ms. Burbridge is new, material, chronologically pertinent, and has a reasonable probability of changing the outcome of Ms. Burbridge's disability claim, the Court finds that the Appeals Council erred in failing to consider it.  As such, the case must be remanded for review of the additional evidence as required under 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

IT IS THEREFORE ORDERED that Ms. Burbridge's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge